# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# Wilkie D. Ferguson, Jr. U.S. Courthouse

Dr. Rehab Auf,
    **[Plaintiff], -V.s-**
Dr. Edna Greene Medford, Dr. Anthony K. Wutoh,
Dr. Wayne A.I. Frederick, Dr. Robert Catchings,
And Howard University
    **[Defendants]**

**Case No.**

**Jury Trial (YES)**

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this Court, nor has transferred after having been assigned to a judge.
Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in all issues.

## PARTIES AND VENUE

1. **Plaintiff,** Dr. Rehab Auf, MD, PhD, is a citizen of the United States and lives in Miami-Dade County, which is in this judicial district. Therefore, this Court venue is appropriate. Her address is: 15300 SW 74 PL, Palmetto Bay, FL 33157 Email: AUF.rehab@outlook.com (Plaintiff requests all submission/contacts to be by email)
2. **Defendant No. 1,** Dr. Edna Greene Medford, Interim Dean, College of Arts and Science, Howard University, 4th and College Streets, NW, Washington, D.C. 20059. E: emedford@howard.edu | Ph: 301 807 6093.
3. **Defendant No. 2,** Dr. Anthony K. Wutoh, Provost, Howard University, Suite 306, Mordecai Wyatt Johnson Building, Washington, D.C. 20059. E: awutoh@howard.edu | Ph: (202) 806-2550.
4. **Defendant No. 3:** Dr. Wayne A.I. Frederick, President, HOWARD UNIVERSITY, 2400 Sixth Street NW, Washington, DC 20059. E: HUPresident@howard.edu | Ph: 202-806-6100.
5. **Defendant No. 4:** Dr. Robert Catchings, Department Interim Chair, Health, Human Performance & Leisure Studies, Room 1011, Burr Gymnasium, Sixth and Girard Streets, NW, Howard University, Washington, DC 20059. E: rcatchings@howard.edu | Ph: 202-806-7142.
6. **Defendant No. 5:** Howard University (Private, federally chartered university in Washington, D.C) Mordecai Wyatt Johnson Building (Administrative Building), 2400 Sixth Street NW, Washington, DC 20059. E: HUPresident@howard.edu | Ph: 202-806-6100.
7. **Reservation to Name Additional Defendants:** In addition to the entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff, but respecting whom Plaintiff currently lacks specific facts to permit Plaintiff to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiff is not waiving her right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION

8. Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

## FACTS

9. This is a civil action brought by Plaintiff against Defendants who, acting individually and acting in connection with others, both known and unknown, conspired and defrauded Plaintiff of more than $100,000 earnings through issuing an employment offer, followed by a scheme of intentional deceit, neglect to their duty of care, and never allowed the plaintiff to start working. Plaintiff relationship with Defendants 1-4 is based on tort and duty of care, which they neglected i.e. not contractual. As a result, Howard University, breached the employment contract dated August 1, 2018. Such conduct left Plaintiff defrauded of employment and earnings since August 16, 2018, in continuous harassment with irreparable career damages and other accruing damages.

10. Howard University faculty handbook, 1993, (**The handbook**) regulates appointment & termination procedures is available at: https://www.howard.edu/secretary/documents/HowardUniversityFacultyHandbook.pdf

    [2.1: "*Contractual Force of Handbook Sections 2 and 3 of this handbook contain the approved policies and procedures of Howard university concerning the terms and conditions of the faculty of the university. **These sections are incorporated into the individual contract of employment of each faculty member**, and they are subject to change by the Board of Trustees as conditions require.*"].

11. On February 2018, Dr. Auf applied to a faculty position at HHPL Department, College of Arts and Science, Howard University (The University) and was interviewed during the months of April-May 2018.

12. Dr. Auf was selected for a tenure track associate professor position by the Department Chair Dr. Roberta Hollander & previous Dean Bernard Mair on June/2018 with defined start date August 16, 2018.

13. Dr. Hollander was removed from the chair position and Dr Robert Catchings was appointed an interim chair, despite his academic background is not related to the department focus and program. The University appointed Interim Dean Edna Greene Medford.

14. Dr. Auf discussed the financial package with Dr Medford & Dr Catchings on June 26,18. Both delayed responding by a final offer to August. 1,18, just 2 weeks short from start date (despite repeated requested from Dr. Auf to send the final offer sooner).

15. Dr. Auf accepted and returned the offer on August 2,18 along with the filled Appointment, Promotion & Tenure (APT) application, which was defined in the said letter. The terms of the contract were three years probationary, then two further years to allow applying for tenure. After which, the appointment becomes

2

permanent. The salary was $100,00 for 9 months per year, $31.518.95 for startup research cost, and $10,000 for relocation expenses. **(Exhibit 1)**

16. Section 2.7.2 of The Handbook describes faculty appointment procedure: "….. *An appointment is not final until a written notice of appointment has been sent by the president (or vice president in the cases noted above where the vice president has final signatory authority) to the candidate who, in turn, has returned a signed acceptance to the official who signed it.*"

17. The appointment approval letter was delayed, therefore Dr. Auf sent several requests for its receipt and urged Dr Medford to honor the agreement to be able to start in the Fall 2018 as agreed. **(Exhibit 2)**

18. Dr. Medford and Dr. Frederick, jointly and separately, intentionally neglected to provide the said appointment letter as The Handbook s2.7.2 requires before August. 16,2018 to enable starting in time.

19. On August 23, 2018 Dr Medford stated the appointment was approved & official appointment letter will be sent soon from her office. **(Exhibit 3)**

20. Dr Medford withheld Dr. Auf's official appointment letter signed by the president "*The Appointment Letter*" preventing her to start working (and Dr. Frederick as the right signatory authority).

21. On Oct. 9, 2018 Dr Medford sent Dr. Auf a letter delaying her start to January 2019 for pretextual reasons. The letter mentioned the delay was because she did not start to work, while Dr. Auf couldn't have started without *The Appointment Letter* which is being withheld from her. **(Exhibit 4)**

22. Dr. Medford intentionally misled Dr. Auf by sending a letter signed by her, not the President who has the right signatory authority pursuant to s2.7.2 of The handbook, and misinformed plaintiff that no more documentation will be forthcoming to confirm the appointment; proving predetermined intention to prevent Dr. Auf from working as she cannot work without *The Appointment Letter* signed by the president pursuant to s2.7.2 of The Handbook. **(Exhibit 4)**

23. On December 6, 2018, Dr. Auf notified Dr. Catchings and Dr. Medford that she will arrive later than January 2, 2019, both did not object or warn of any consequences.

24. On December 7, 2018 Dr Medford advised postponing the onboarding after campus arrival. **(Exhibit 5)**

25. Dr. Medford sent Dr. Auf an email requiring her arrival at campus by January 14,2019. Dr. Auf arrived in the defined date and attended the new faculty orientation. **(Exhibit 5)**

26. Dr Catchings did not offer Dr. Auf office space upon arrival violating the offer letter and refused her request on February 8, 2019. **(Exhibit 5)** Proving predetermined intention not to allow Plaintiff to work.

27. On Jan 16, 2019 Ms. Victoria Sari, Human Resources (HR) sent Dr. Auf an email requiring her to "REapply" for her approved position to start the onboarding process at Howard University. **(Exhibit 6)**

3

28. The link led to the HR website, where people make initial application for positions.

29. The University describes the onboarding process: "*The process starts when the Office of HR issues the candidate an offer letter, proceeds when the candidate attends the new hire seminar, and ends when the new employee receives their first paycheck.*" available at: http://hr.howard.edu/onboarding/. The text is self-explanatory and does not start by submitting additional application or include it any in part. Therefore, the University did not apply the onboarding procedure as prescribed to Plaintiff.

30. Initially, Dr. Auf requested clarification from Dr. Medford on the onboarding process (purpose and steps) on December 18, 2018. (**Exhibit 5**) Dr. Auf repeated her request for clarification on the onboarding process to Dr. Medford on January 16, 2019. She did not respond in both occasions.

31. On January 17, 2019, Dr. Thomas Foster (Associate dean) responded among other things "*I understand that the language of "applying" for the position may be off-putting to you but please do follow through immediately with the online onboarding process.*" Dr. Foster did not offer justification to explain why this application was mandated, while it is in violation of the issued onboarding process, The Handbook 2.7.2, and agreement between parties. On January 18, 2019 he added among other things: "*I have discussed your concerns with Dean Medford and she does not find it necessary to speak with you at this point regarding this entirely administrative issue.*"! Dr. Medford recognized the matter as entirely administrative; proving the later alleged academic negligence is falsified. Plaintiff maintains admission of no wrongdoing.

32. More importantly, if this matter was serious and would lead to termination, Dr Medford should have clarified the situation & warned of possible termination in writing pursuant to The Handbook s2.8.5 A.

33. The language of "apply" allows the possibilities to be either rejected or accepted, and if accepted then a new/different offer could be provided. After Dr. Auf committed herself to Howard University on August 3,2018, those options were all unjust and in breach of contract having violated The Handbook s2.7.2 and the offer letter for August. 2,2018 which did not specify this application.

34. As such, Dr. Auf asserted her rights and inquired about the justification to the request to "REapply" from Dr Medford, Dr Catchings, Dr Okainer Dark (Associate provost) January 22, 2019, Ms. Victoria Sari (HR) January 31, 2019. (**Exhibit 6**) No justification was provided. Dr. Dark organized the faculty orientation. Therefore, she had a duty of care to offer the requested clarifications.

35. Due to Dr. Medford's lack of response to Dr. Auf's repeated emails, plaintiff went to meet her on February 6, 2019. In this meeting she surprised Dr. Auf by suggesting a termination process might be initiated and she had someone else teaching her class, without giving reasons or any opportunity for representation or resolution e.g. meeting with Dr. Catchings to resolve the matter.

36. Dr. Medford instructed Dr. Auf to meet Mr. William Teeling (an attorney at the University) to resolve matters. Dr. Auf met Mr. William Teeling on February 7, 2019. He refused to hear Dr. Auf's defense, spoke in disrespectful manner and ended the meeting. Therefore, Dr. Medford misdirect Dr. Auf to meet him.

37. Dr. Auf emailed Dr. Medford on February 8, 2019 a defense without knowing the actual reasons for termination to stop initiating any termination. Dr. Medford emailed back within couple of hours saying that she already submitted her recommendation for termination to the Provost.

38. Dr. Medford had a duty to meet Dr. Auf with Department Chair, present Dr. Auf with written reasons for the sought termination, and afforded Dr. Auf an opportunity of informal adjustment before proceeding into termination pursuant to sections 2.8.5 A, 2.8.5.1 B of The Handbook. None of these opportunities were offered to the plaintiff. The fact that Dr. Catchings and Dr. Medford intentionally never offered opportunity to resolve matters before initiating termination, indicates a predetermined intention to terminate Dr Auf and never to allow her to work.

39. Dr. Medford submitted her recommendation for termination to the Provost (Dr. Anthony Wutoh) on February 7,2019. This allowed 17 days, from January 22, 2019, (or even two months from Dr. Auf's first inquiry on December 7, 2018), after Dr. Auf requested the regulations to justify the request to "apply" and the issued procedure of the onboarding, which would have resolved the situation before the Dean's recommendations were submitted. Dr. Medford intentionally neglected her duty of care to plaintiff.

40. Dr.Wutoh sent the plaintiff a letter to define the reasons to initiate the termination (after it was already initiated). It stated that the termination is sought for academic negligence. (**Exhibit 7**)

41. Dr. Wutoh mandated Dr. Auf to meet him on February 14, 2019. Dr. Auf sent written representation (**Exhibit 8**) stating she did not receive *The Appointment Letter* by the president therefore could not start, therefore no academic negligence can be alleged. She confirmed that the HR wrongly asked her to "apply" for her approved position, since this is not part of the onboarding process. She explained the unfairness of Dr. Catchings to her in assigning academic duties. Dr. Auf requested the issued onboarding process, justification for the request to "apply", if any & an opportunity for informal adjustment pursuant to s2.8.5.1B of The Handbook before further proceeding.

42. On March 6, 2019 Dr Wutoh sent Dr. Auf a letter stating that the president made preliminary termination decision, signed by him (not the president). (**Exhibit 9**) Dr. Auf was never given the decision made by the president to understand its grounds considering her latest representation.

43. Plaintiff was not given the reasons for which the preliminary termination was decided after her defense. Therefore, she requested such reasons from Dr. Wutoh (**Exhibit 9**) e.g. why she was asked to REapply for

her approved position, why she was not afforded informal opportunity of adjustment, most importantly how academic negligence can be alleged before the receipt of *The Appointment Letter* and starting to work? Dr. Wutoh did not address Plaintiff questions, therefore Dr. Auf did not and continues not to have just opportunity to represent herself in the entirety of this Complaint.

44. Dr. Auf never received *The Appointment Letter* and never started to work. Therefore, no academic negligence can be alleged. Thus, the stated reason is merely pretextual.

45. Plaintiff sent a letter to Dr. Wayne Frederick (the president) dated March 18, 2019 for defense, requested *The Appointment Letter* & to be instated immediately. Another letter was sent to the head of the grievance commission (Dr. Alfred Marcus). Dr. Auf sent several emails and a final demand letter to Dr. Frederick. (**Exhibit 10**) No response was obtained to date.

46. On April 1, 2019 Dr Wutoh refused Dr. Auf's request for *The Appointment Letter* which was sent to Dr. Frederick on March 26, 2019. (**Exhibit 10**) This decision violated s2.8.5 C & s2.8.5.1 D of Howard University faculty handbook that allows faculty to work with full pay until final determination.

47. Dr. Auf made a record request to Dr. Wutoh, repeated it to Dr. Frederick, and Dr. Marcus. (**Exhibit 9 & 10**) She did not receive the sought records; denying Plaintiff just opportunity for defense.

48. Back on November 18, 2018 Dr Catchings asked Dr. Auf to teach human anatomy in the Spring. (**Exhibit 5**) Dr. Auf requested the syllabus to prepare the course, he did not respond. After arrival to the Department, he mentioned this course was not offered in the Spring.

49. On January 22, 2019 Dr. Catchings asked Dr. Auf to teach a course that was being taught by adjunct faculty Dr. Melissa Duchene a day before the class date. (**Exhibit 5**)

50. The fact he assigned Dr. Auf a class that will not be offered in Spring & informed her very late about the class that is being offered & taught by Dr Duchene (who was aware of the course in the right time).

51. Dr. Auf responded (**Exhibit 6**); requesting justification for the request to REapply and reasonable time to prepare for the course. Dr. Catchings neglected to respond.

52. At any occasion, Dr. Auf was unable to teach or work at all because the University was withholding *The Appointment Letter*. Dr. Catchings very late course assignment request seemed a pretext to falsely allege the academic negligence background as will develop later.

53. Dr. Auf spent her entire life to be trained as an academic. Defendants acting together and separately defrauded Plaintiff of one-year employment, associated earnings, and damages are continuing. The no employment gap and the allegations of academic negligence will occlude Plaintiff future academic career as no University will hire her under these circumstances.

54. Plaintiff made sincere efforts to resolve matters with Defendants at no avail. Plaintiff raises this action in good faith after exhausting all opportunities.
55. Plaintiff incorporates all Complaint and Counts paragraphs as if fully set forth under each listed count.

## COUNT 1: NELIGANCE & HARASSMENT
### (Defendants: Drs Edna Medford, Antony Wutoh, Wayne Frederick, Robert Catchings, Howard University)

56. Defendants owe a duty of care to Plaintiff as direct supervisors and senior officials who should have facilitated her start of working on the defined date; should have offered opportunities to avoid termination by informal adjustments; which they intentionally neglected, that no reasonable person would have done what they did or followed the same course of actions they followed.
57. Dr. Catchings neglected his duty of care to assign Dr. Auf a course to teach and allow adequate time to prepare. He neglected his duty to clarify the onboarding and the request to REapply that led to Plaintiff termination. Given the said reason of termination is academic negligence, his negligence contributed massively to Plaintiff's irreparable harm. As a department chair, he had a duty of care to ensure Dr. Auf received her paperwork before the start date on August 16, 2018 and advised her by the need of the president signed appointment letter before relocation and starting (he had constructive notice of the issues). He neglected warning Dr. Auf that her late arrival at campus might contribute to a negative decision against her, while she notified him of possible delay.
58. Dr. Medford neglected her duty of care by doing the following: Intentionally delayed the final offer letter for 2 weeks before the start date to impede Plaintiff's ability to relocate from Miami to DC and start in time; Neglected Dr. Auf's repeated emails seeking *The Appointment* letter to start as defined and delayed her start for pretextual reasons.; Neglected to address Dr. Auf repeated inquires about the onboarding and the request to REapply; Asked associate dean (Dr. Foster) to convey to Plaintiff that this is an administrative matter that does not require her attention, then initiated termination against Plaintiff based on those events i.e. Neglected to warn Dr. Auf this might lead to termination and resolve the matter; Neglected to offer opportunities to resolve matters before such drastic measure as the termination; She refused to meet Dr. Auf before initiating the termination, while she had a caring duty to resolve matters; She instructed Dr. Auf to arrive at Campus by January 14, 2019 to attend the orientation and live in DC on her expenses, then initiated unjust termination without pay.
59. Dr. Wutoh, as the Provost and Chief of Academic Officer had a duty of care which he neglected by doing the following: Neglected to explain to Dr. Auf why she was mandated to apply for her approved position and allow time to resolve this matter before advancing the matter to the president; Neglected to correct

7

the delay in receiving the appointment later (despite his awareness) and refused Plaintiff later request to receive the appointment letter; Had constructive notice that Dr. Medford misinformed Plaintiff stating that the appointment letter signed by her is the final appointment documentation and neglected his duty to correct this wrongdoing; Neglected to offer informal opportunity to resolve matters despite Dr. Auf's sincere wish to resolve matters as conveyed to him and progressed the matter to the president; Neglected to provide the records Dr. Auf requested from him to understand the followed procedure and reasons in progressing the termination; Neglected to provide Plaintiff the preliminary decision of termination signed by the president and sent a letter signed by him, blinding Plaintiff from the reasons of this decision.

60. Howard University President, Dr. Frederick, has the top authority to correct the Complaint wrongdoings, yet he neglected his duty of care by: Neglecting his duty to send Plaintiff *The Appointment Letter* to enable her employment; Neglecting his power to reverse the termination despite the Plaintiff's several representations and falsified cause; Neglecting to afford Plaintiff informal adjustment to resolve matters; Neglecting to provide his decision and sought records to Plaintiff; Neglected Plaintiff complaint against Dr. Wutoh and further referred matters to him to decide i.e. apparent bias; Neglecting the Plaintiff's request to work until a final determination to be made while he had a duty of care to reduce damages.

61. Defendants are senior officers; their negligence is proxy to Howard University negligence.

62. The collective, and separate, negligence of Defendants caused Plaintiff to lose employment and earnings with continuous harassment that put Plaintiff into stress and damages.

## COUNT 2: FRAUD, DEFRAUD, CONSPIRACY
### (Defendants: Drs Edna Medford, Antony Wutoh, Wayne Frederick, Robert Catchings, Howard University)

63. Defendants, jointly and separately, collaborated with known and unknown individuals, and conspired in a scheme of wrongdoings and intentional deceit from June 25, 2018 and continuing leading Plaintiff to commit herself to working at The University then prevented her start of employment on August 16, 2018 and continuing, defrauding Plaintiff of employment, earnings, and caused damages.

64. Defendants, jointly and separately, withheld *The Appointment Letter* and deceived the Plaintiff to arrive at campus without having her appointment letter beforehand to facilitate their planned termination without her being even able to start working; all had constructive notice or actively shared.

65. Defendants had a constructive notice of Plaintiff being mandated to REapply. Defendants initiated and progressed a falsified cause of termination after Plaintiff inquiry on the grounds of such request. Should Plaintiff complied and accepted the additional application, Defendants could have rejected employing Dr. Auf, because the language allows such possibility, while they failed to justify this request.

66. Dr. Catchings assigned Plaintiff earlier a course that will not be offered, then one day before class date he assigned a new course (while having constructive notice of the request to REapply and Plaintiff appointment letter being withheld) to facilitate falsifying the academic negligence termination scenario.

67. The letter signed by Dr. Medford claiming that no further appointment documentation will be forthcoming is a proof of intentional deceit, since the appointment letter signed by the president should have been offered to the Plaintiff before the defined start date of August 16, 2018.

68. Defendants collectively, and separately, did not correct Dr. Medford's deceitful claims on *The Appointment Letter* after constructive notice and progressed falsified termination as a cover up.

69. Defendants collectively and separately continue to conspire to defraud Plaintiff from employment and earnings, blind her from Complaint background, without showing any attempt of good faith to resolve matters, despite several Plaintiff attempts to do so. Reference is made to entirety of this Complaint.

## COUNT 3: VICARIOUS LIABILITY
### (Defendants: Drs Wayne Frederick, Antony Wutoh and Howard University

70. At all times material, Defendants not included in this count (and others known and unknown) were employed by Howard University and under direct supervision of Dr. Wayne Frederick, President, and Dr. Antony Wutoh, Provost, and control when committed the wrongful acts described herein. Those individuals (known and unknown) engaged in this conduct while in the course and scope of their employment and/or acted in negligence to their duty of care, collaborated and conspired in deceitful conducts to harass & defraud Plaintiff of employment and earnings by virtue of their job-created authority. Other Defendants wrongful acts were foreseeable and Dr. Frederick and Dr. Wutoh had constructive notice, and contributed, to those wrongful acts and neglect. Defendants in this count are liable for the wrongful conduct of the collective and separate wrongdoings of other Defendants (listed in this complaint or unknown) under the law of vicarious liability, including the doctrine of Respondeat Superior.

## COUNT 4: BREACH OF CONTRACT
### (Defendant: Howard University)

71. Howard University is in breach of contract with Dr. Auf having failed to fulfill the written agreement between parties (discussions started June 2018 and were finalized in the letter of August 1, 2018, which Dr. Auf signed on August 2, 2018) and having failed to apply the appointment and termination procedure as detailed in The Handbook (which its sections are referred to in the Complaint).

72. <u>Appointment procedure</u>: having failed to deliver *The Appointment Letter* before August 16, 2018 to date; Delayed Dr. Auf start date from August 16, 2018 to January 2019 for pretextual reasons; Required Dr. Auf

to submit additional application that was not listed in the offer letter violating The Handbook s.2.7.2; didn't offer office space upon arrival to campus (breach of written agreement).

73. <u>Termination procedure:</u> having initiated & progressed termination for academic negligence, because:

74. She never received *The Appointment Letter* and never started to work i.e. termination cannot be initiated for any cause before she is fully employed, assigned duties, and started working.

75. Dr. Catchings assigned Dr. Auf a class that will not be offered in the Spring, then assigned a new class one day before the class date; violating **Section 2.7.7(a)** of The Handbook which requires fairness in teaching assignments. In the mind of any fair-minded person, it would be unfair to require a professor to teach a new course one day before the class date. Therefore, despite plaintiff was unable to teach because she did not receive *The Appointment Letter* and the HR failed to offer the onboarding process as described, such sudden assignment would be unjust, hence in breach of contract.

76. Howard University failed to apply the termination procedure as described in The Handbook because:

    **1)** Dr. Auf never received a clear warning that her employment is in jeopardy stating wrongdoing with time for correction violating s2.8.5 A (Dr. Catchings & Dr. Medford should have done so in academic matters);

    **2)** The Dean (Dr. Medford) did not meet Dr. Auf with the Department Chair (Dr. Catchings) violating s2.8.5.1 B, given the allegations of academic negligence, to resolve matters;

    **3)** Dr. Medford didn't afford informal opportunity to resolve matters violating s2.8.5.1 B;

    **4)** Dr. Medford did not offer written reasons for termination and an opportunity for representation before submitting her recommendation for the provost violating s.2.8.5 A;

    **5)** Dr. Medford was wrong to submit the termination recommendation to the provost, Dr. Wutoh, while he is not listed in the termination procedure as a decision maker);

    **6)** Dr. Wutoh and Dr. Medford wronged to further the recommendation of termination to the president without affording Dr. Auf an opportunity for informal adjustment and explaining what wrong she has done in context of her submitted representation, albeit Plaintiff admits no wrong, violating s.2.8.5 A & s2.8.5.1 B;

    **7)** Dr. Wutoh obstructed just opportunity for defense by sending a letter signed by him (not the president) without showing the reasons for which the president made preliminary decision of termination after considering Dr. Auf's defense;

    **8)** Dr. Wutoh refused Plaintiff's request to receive her appointment letter and to work until a final termination decision to be made violating s2.7.2, s2.8.5 C & s2.8.5.1 D;

    **9)** Dr. Catchings refused to offer Dr. Auf an office space to work until a final termination decision to be made violating s2.7.2, s2.8.5 C & s2.8.5.1 D;

**10)** The president, Dr. Frederick, had constructive notice of the issues, yet: did not adjust the matter; did not provide reasons for his preliminary decision; did not provide the appointment letter; did not allow Dr. Auf to work as she requested until final determination. The president preliminary termination decision is pending final decision by the president after considering matters, Dr. Frederick lack of response, provision of reasons for his preliminary decision, failure to provide an informal adjustment opportunity, and failure to act on his stated role in the termination to reverse it left Dr. Auf without employment to date and irreparable harm violating s2.7.2, 2.8.5.1 B, s2.8.5 C & s2.8.5.1 D;

**11)** The grievance commission didn't respond to Dr. Auf submission or offered Dr. Auf a hearing or any just opportunity to defend herself against the termination allegation violating s2.8.5.1 E & F.

**77.** Plaintiff lost employment and earnings of excess of $100,00 of one year earning & loss is continuing.

## RELIEF

WHEREFORE, Plaintiff demands judgement against Defendants individually, jointly, and Severally:

(1) Order of instatement for Plaintiff at Howard University as tenure track associate professor. No academic institution will hire Plaintiff after Defendants' false allegations and one year with no employment and continuing. Therefore, reinstatement is the only just remedy for future relief.

(2) To pay the Plaintiff lost earnings in an amount in excess of $100,000 plus additional earning loss to the date of instatement i.e. back pay and front pay, $31.518.95 for research support, fees incurred, interest & damages as will be detailed (damages are accruing, hence cannot be limited to this point of time);

(3) Order placing Plaintiff in the position that she would have been in had there be no violations of her rights;

(4) Order enjoining/restraining Defendants not to retaliate or create hostile environment for Plaintiff;

(5) Such other and further relief as the Court deems just and appropriate after a jury trial.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

**Respectfully submitted,**

Signature of Plaintiff: _[signature]_                                   Date of signing: May 21, 2019

Printed Name of Plaintiff: Dr. Rehab Auf

Address of Plaintiff: 15300 SW 74 PL, Palmetto Bay, FL 333157